## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

NEVIYEBEL CINTRON-ALONSO

    Plaintiff

        v.                            **Civil No.** 08-1450

GSA CARIBBEAN CORPORATION, et al

    Defendants

### OPINION AND ORDER

Pending before this Court is Defendant GSA Caribbean Corporation's ("GSA" or "Defendant") Brief Regarding Threshold Jurisdiction (Docket # 24), which this Court has considered as a second motion to dismiss, and Plaintiff's opposition thereto (Docket # 26). After considering all the filings, and the applicable law, for the reasons stated below, Defendant's motion will be **GRANTED**.

**Factual Background**

On August 1, 2008, GSA, along with co-defendants Edgardo Gordilis-Zapata ("Gordilis"), and Norma Serrano-Melendez ("Serrano"), filed a motion to dismiss premised on several grounds, including Serrano and Gordilis' lack of individual liability under Title VII, and GSA's employer liability under Title VII as an entity allegedly with less than 15 employees. On March 16, 2009, this Court granted dismissal as to Gordilis and Serrano, but denied without prejudice the motion to dismiss as to GSA, finding it premature. See Cintron-Alonso v. GSA Caribbean Corp., 602 F.Supp.2d 319 (D.P.R. 2009). Instead, the parties were ordered to conduct limited discovery as to the number of employees at GSA during the period relevant to this lawsuit in order to determine if this Court has subject matter jurisdiction. Accordingly, after engaging in limited discovery, GSA filed the motion to dismiss now before this Court. The facts are

**CIVIL NO. 08-1450 (SEC)** Page 2

generally the same as those presented in GSA's first motion to dismiss. However, this Court will restate them as relevant for the disposition of the present motion.

GSA is a general insurance agent of American Heritage Life Insurance Company ("AHL"). It operates through "subordinate agents," classified as Independent Insurance Producers ("IIP"), who sell AHL products through GSA's office in Puerto Rico. Nevertheless, the fundamental contractual relationship exists between the IIPs and AHL. See, e.g., Docket # 24-2 & Docket # 24-11 at 3. The number of employees reported in GSA's Quarterly Employment Reports filed with the Department of Labor and Human Resources ("DLHR") fluctuated between two (2) and six (6). See Docket # 10, Exh. 6. If this Court were to include Gordilis and Serrano in its calculations, the number would rise to a maximum of eight (8) employees at GSA, without including any of the insurance agents. However, Plaintiff alleges that the actual number of employees is much higher, because GSA's DLHR report does not include the IPPs who work with the company.

**Standard of Review**

FED. R. CIV. P. 12(b)(1) is the proper vehicle for challenging a court's subject matter jurisdiction. Valentín v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). Under this rule, a wide variety of challenges to the Court's subject matter jurisdiction may be asserted, among them those based on sovereign immunity, ripeness, mootness, and the existence of a federal question. Id. (citations omitted). When faced with a similar jurisdictional challenge, this Court must "... give weight to the well-pleaded factual averments in the operative pleadings [ ... ] and indulge every reasonable inference in the pleader's favor." Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007).

Generally, when considering a motion to dismiss, the court must decide whether the

**CIVIL NO. 08-1450 (SEC)**                                                                                              **Page 3**

complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). When the motion to dismiss is for failure to state a claim, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, a plaintiff faced with a motion to dismiss for lack of subject matter jurisdiction has the burden to demonstrate that such jurisdiction exists. See Lord v. Casco Bay Weekly, Inc., 789 F.Supp. 32, 33 (D.Me.1992); see also SURCCO V. PRASA, 157 F.Supp.2d 160, 163 (D.P.R.2001). In order for a plaintiff's claim to be dismissed for lack of subject matter jurisdiction, due to the inadequacy of the plaintiff's federal claim, that claim must be "... so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." Oneida Indian Nation of N .Y. v. County of Oneida, 414 U.S. 661, 666 (1974). In this context, this Court is empowered to resolve factual disputes by making reference to evidence in the record beyond the plaintiff's allegations without having to convert the motion to dismiss into one for summary judgment. See Lord, 789 F.Supp. at 33 (D.Me.1992); see also SURCCO, 157 F.Supp.2d at 163 (D.P.R. 2001). "Where a party challenges the accuracy of the pleaded jurisdictional facts, the court may conduct a broad inquiry, taking evidence and making findings of fact." Hernández- Santiago v. Ecolab, Inc., 397 F.3d 30 (1st Cir.2005). Therefore, the court may consider extrinsic materials, "and, to the extent it engages in jurisdictional fact-finding, is free to test the truthfulness of the plaintiff's allegations." Dynamic Image Technologies, Inc. v. U.S., 221 F.3d 34, 38 (1st Cir. 2000). That is, the principle of conversion of a motion to dismiss into a motion for summary judgment when extrinsic materials are reviewed, does not apply in regards to a motion to dismiss for lack of subject matter jurisdiction. Id.

**Applicable Law and Analysis**

**CIVIL NO. 08-1450 (SEC)**                                                                 **Page 4**

*Federal Discrimination Claims*

Plaintiff brings the present action alleging she was discharged from her employment at GSA when her supervisors learned she was pregnant. Discrimination based on pregnancy and gender are prohibited under Title VII. 42 U.S.C. § 2000e(k). See Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d 1, 6 (1st Cir. 2004). In the statute an employee is "an individual employed by an employer," but this definition "is completely circular and explains nothing." Id. (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992))(internal quotations omitted). Furthermore, to qualify as an "employer" under Title VII, a company must have more than 15 employees, working for twenty or more weeks in the same year as the discriminatory practice occurred. De Jesus v. LTT Card Servs., 474 F.3d 16, 18 (1st Cir.P.R.2007) (citing 42 U.S.C. § 2000e(b)); see also Cintron-Alonso, 602 F.Supp.2d at 325.

Case law has established that Title VII does not cover independent contractors. Id. In coming to this conclusion, the First Circuit has chosen "to apply common law agency principles simpliciter in determining when an employment relationship exists. . ." Camacho v. Puerto Rico Ports Authority, 369 F.3d 570, 574 (1st Cir. 2004); see also Alberty-Velez, 361 F.3d 1. This approach primarily focuses on "the hiring party's right to control the manner and means by which the product is accomplished." Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323 (1992). In Camacho, the First Circuit looked directly to the factors analyzed in Nationwide, accordingly, this Court must do the same. These factors include:

> . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in

**CIVIL NO. 08-1450 (SEC)**                                                                 **Page 5**

business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 323-24 (quoting Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989)). Much like the harbor pilots' relationship examined in Camacho, the IPPs Plaintiff alleges are employees of GSA for the purposes of Title VII do not have a conventional employment relationship with GSA. Camacho, 369 F.3d at 574. However, the courts have elaborated an exception to common law agency principles, when "an entity that so extensively controls an aggrieved party's employment relationship as to become that party's *de facto* employer." Camacho, 369 F.3d at 574.

While IPPs, or individual agents, are in many ways dependent on general agents such as GSA, they "retain important badges of autonomy," as demonstrated in the contracts provided by Defendant. Camacho, 369 F.3d at 576. These individual agents set their own schedules, seek-out their own clients, chose their own areas of operation, and are paid in accordance with the insurance policies they sell. Their work is not based out of GSA's offices, nor do they operate under the direct control of GSA's administrators. As independent agents they enjoy "considerable discretion in the mode and manner in which they perform their duties." Id. at 66. Here, as in Alberty-Velez, the IPPs have no duties to GSA beyond those set forth in the contract. See IIP Contracts, Docket # 24, Exh. ## 1-9. The IIPs, or agents, sell insurance on their own schedule, and are compensated accordingly. In this sense, GSA has very little control over the manner and means the IPPs go about their work of selling insurance on commission.

This contrasts with GSA's relationship to Plaintiff, who was under the corporations' constant control and supervision as a clerical employee. As in Alberty-Velez, the IPPs do not receive benefits, and are paid through "commissions and service fees on premiums paid in cash to AHL." See, e.g., Docket #24-2 at 2. Furthermore, unlike a typical employee-employer

**CIVIL NO. 08-1450 (SEC)**                                                                 **Page 6**

relationship, which in Puerto Rico is covered by Law 80, the contract between GSA's IPPs and AHL could be terminated at will by either party with 15 days notice. Id. at 3. These factors point to independent contractor status. See Alberty-Velez, 361 F.3d at 8-9 at fn 10.

Furthermore, the fact that an individual obtains the lions' share of her income from a particular contract does not factor into the First Circuit's calculus, because it has specifically rejected any "hybrid test." Accordingly, this Court's hands are tied in searching for any other economic reality beyond the common law standard. Moreover, using the Walters payroll method, as Plaintiff suggests, does not help her case as the insurance agents are not on GSA's payroll, rather they work on commission. See Docket # 10, Exh. 6.; Docket # 24 Exh. 10. While Plaintiff alleges that Defendants failed to offer evidence to support its assertion that the IPPs are not employees of GSA, this Court finds said allegation inaccurate in light of Gorilis' sworn statement, and the contracts presented as evidence that the company does not meet the 15 employee threshold. See Docket # 24, Exh. ## 1-10. Additionally, Plaintiff fails to proffer any convincing case law backing her assertion that an independent insurance agent should qualify as an employee under Title VII, nor does she make substantive factual allegations that challenge GSA's version of the IPPs' status

For all of the above, this Court finds that Defendant has provided sufficient evidence that its insurance agents are independent contractors, and not employees as imagined by Title VII. Therefore, there being no further dispute over the number employees at the company, this Court concludes that GSA does not meet the 15 employee threshold as required by Title VII, and these claims must be **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction. Nevertheless, Plaintiff is not without remedy, as she is free to pursue her Commonwealth of Puerto Rico claims in the local courts.

*State Law Discrimination Claims*

Exercising jurisdiction over pendent state law claims once the federal law claims are dismissed is discretional. See Newman v. Burgin, 930 F. 2d 955, 963-964 (1st Cir. 1991)(holding that "the power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one substantial federal claim in the lawsuit...[and] the district court has considerable authority whether or not to exercise this power, in light of such considerations as judicial economy, convenience, fairness to litigants, and comity."). Because this Court has dismissed all of the federal causes of action, in the interest of comity, the Court will also **DISMISS without prejudice**, all of Plaintiffs' state law claims.

**Conclusion**

For the reasons stated above, Defendant's motion to dismiss is hereby **GRANTED.** Plaintiff's claims under Title VII are hereby **DISMISSED WITH PREJUDICE**, whilst Plaintiff's state-law claims are hereby **DISMISSED WITHOUT PREJUDICE**. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of July, 2009.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge